UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA ROSEWOLF, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MERCK & CO., INC., et al.,<br><br>    Defendants. | Case No. 22-cv-02072-JSW<br><br>Re: Dkt. Nos. 12, 34 |
| SHAUNA GIBSON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MERCK & CO., INC., et al.,<br><br>    Defendants. | Case No. 22-cv-02263-JSW<br><br>Re: Dkt. Nos. 8, 26<br><br>**ORDER GRANTING MOTIONS TO SEVER AND DENYING CROSS-MOTIONS TO CONSOLIDATE RELATED CASES** |

Now before the Court for consideration are motions to sever filed by Defendants, Merck & Co., Inc., Merck Sharp & Dohme Corp., Organon & Co., and Organon, LLC ("Defendants"), and cross-motions to consolidate filed by Plaintiffs Joshua Rosewolf, Veronica Lewis, Shauna Gibson, and Cam Yuen ("Plaintiffs"). In their motions, Plaintiffs move to consolidate four cases the Court has deemed related: *Rosewolf v. Merck & Co., Inc.,* No. 22-2072-JSW, *Starr v. Merck & Co., Inc.*, No. 22-cv-2138-JSW ("*Starr*"), *Skinner v. Merck & Co., Inc.*, No. 22-cv-2260, and *Gibson v. Merck & Co., Inc.*, No. 22-cv-2263-JSW ("*Gibson*").[1]

Defendants oppose consolidation and argue that Rosewolf's and Lewis' claims must be

---

[1] Plaintiffs state their counsel has filed other cases in state courts that fall within the Northern District and state they would move to consolidate those cases, if they are removed. (Opp. Br. at 2:4-7.)

severed from each other and that the same is true for Gibson's and Yuen's claims.[2]

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS Defendants' motions and DENIES Plaintiffs' motions.

**BACKGROUND**

On March 4, 2022, Rosewolf and Lewis filed suit in the Superior Court of California, County of Humboldt, and Defendants removed to this Court on March 31, 2022. (*Rosewolf,* Dkt. No. 1, Notice of Removal.) On March 3, 2022, Gibson and Yuen filed suit in the Superior Court of the State of California, County of Alameda, and Defendants removed to this Court on April 11, 2022. (*Gibson*, Dkt. No. 1, Notice of Removal.)

Defendants manufacture and sell the brand-name drug "Singulair" and held patent rights in montelukast, Singulair's active ingredient, until August 3, 2012.[3] (*See, e.g., Rosewolf* Compl. ¶¶ 2, 28.) After the patent expired, other companies began to manufacture and sell generic monteluskat. (*Id.* ¶ 87.) All Plaintiffs allege Defendants were aware that Singulair could cause neuropsychiatric injury but failed to adequately warn of that possibility and failed to maintain the accuracy and adequacy of its warning labels. (*Id.* ¶¶ 88-92.)

Rosewolf alleges that he was prescribed and used brand-name Singulair from 2005 to 2008, and alleges that the drug caused him to suffer neuropsychiatric injury including depression, hostility, suicidality, and tics. (*Id.* ¶ 8.) Lewis alleges that she was prescribed Singulair from 2012 to 2020 and alleges her prescriptions were filled "with branded and/or generic Singulair." (*Id.* ¶ 9.) She also alleges the drug caused her to suffer neuropsychiatric injury including depression. (*Id.*) Gibson alleges she was prescribed and used Singulair and/or its generic equivalent from 2015 to 2021 and, as a result, suffered neuropsychiatric injury including depression. (*Gibson* Compl. ¶ 8.) Yuen alleges he was prescribed and used Singulair and/or its

---

[2] Defendants have also filed motions to dismiss in each case, which raise nearly identical arguments across the cases. The Court will address those motions in separate orders.

[3] Plaintiffs allege the Merck entities "spun-off" Singulair to the Organon entities at some point in 2020. (*Rosewolf* Dkt. No. 1-1, Declaration of Shannon Beamer, Ex. 1 at ECF pp. 8-50 (*Rosewolf* Compl. ¶ 14); *Gibson* Dkt. No. 2, Declaration of Shannon Beamer, Ex. 1 at ECF pp. 9-51 (*Gibson* Compl. ¶ 14).)

2

generic equivalent from 2020 to 2021 and, as a result, suffered neuropsychiatric injury including depressions, anxiety, obsessive-compulsive disorder and tremors. (*Id.* ¶ 9.)

Based on those and other facts, Plaintiffs assert the following claims for relief: strict liability and negligence claims based on a failure to warn; negligent misrepresentation; and breach of express and implied warranties.[4] The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     The Court Grants the Motions to Sever.**

Rule 20(a) of the Federal Rules of Civil Procedure permits the joinder of multiple plaintiffs in a single action "if (1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).[5] Rule 20 should be construed liberally. *See League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir.1997). When considering whether joinder is appropriate, a court must keep in mind judicial economy as well as fairness to the parties. *Id.* "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing, *inter alia,* Fed. R. Civ. P. 21). Under Rule 20(b), the Court also may order separate trials to avoid prejudice. *Coleman*, 232 F.3d at 1296.

Defendants argue that each Plaintiff's claim does not arise from the same transaction because they were prescribed Singulair (or its generic equivalent) at different times and have suffered different injuries. The "same transaction or occurrence" requirement, "refers to similarity in the factual background of a claim." *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 842-43 (9th

---

[4]     Plaintiffs conceded that their claims based on design defects (Claim 1) and manufacturing defects (part of Claim 3) should be dismissed. (*See, e.g., Rosewolf* Dkt. No. 32, Rosewolf Opp. to Motion to Dismiss at 6:3-4).)

[5]     Although California law mirrors Rule 20, "California joinder rules have been construed liberally and there are situations where the State's joinder rules would allow for permissive joinder of defendants while the federal rules would not." *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1128-29 (E.D. Cal. 2004).

3

Cir. 2000); *see also Flauta v. Johnson & Johnson*, No. CV 12-9095-PSG (AGRx), 2013 WL 12138986, at *2 (C.D. Cal. Jan. 10, 2013). There is no fixed definition of "transaction," "occurrence," or "series, and a court must assess each case's facts individually to determine whether joinder of multiple plaintiffs is appropriate. *Walker v. Bryson*, No. 11-cv-0095-AWI-SKO, 2012 WL 5186658, at *4 (E.D. Cal. Oct. 16, 2012) (citing *Coughlin*, 130 F.3d at 1350). The second prong of the Rule 20 test is "not a particularly stringent test." *Id.* (citation omitted). There need only be one common question of law or fact, and commonality in the context of joinder does not require the common question to be the predominant issue in the litigation. *Id.*

In *Flauta,* on which Defendants rely, the court granted a motion in a case with 940 plaintiffs from 43 states who alleged they suffered injuries after ingesting a drug manufactured by the defendant. 2013 WL 12138986, at *1. The court noted disagreement among district courts about whether joinder is improper such cases but stated "the majority of courts to address the issue have found joinder in appropriate when based only on allegations that all plaintiffs ingested the same drug … and suffered similar injuries." *Id.*, at *2 (citing cases). The court reasoned that because the plaintiffs did not provide any information about why they were prescribed the drug, the dosage, or how long they were exposed to it, it could "only conclude [they] had different medical histories and experiences with the drug," especially when it was prescribed by different physicians at different times. *Id.*, at *3. The court concluded that "[t]he purposes of Rule 20(a) are not served when the claims are similar in nature or share some commonalities but are predicated on distinct factual scenarios. *Id.* It therefore dismissed, without prejudice, all but the first named plaintiffs.

Plaintiffs rely on two recent cases from the Central District, which they argue shows the common allegations about similar injuries caused by the same drug does not require severance. However, in each of those cases the courts were considering the issue of severance and improper joinder in the context of whether to remand multi-plaintiff cases that the defendants had removed to federal court. *See Kelly v. Amylin Pharm, LLC,* No. 14-cv-1086-AJB (MDD), 2014 WL 12496549, at *7 (S.D. Cal. Aug. 8, 2014); *Rappuchi v. Johnson & Johnson*, No. CV-14-2916 JGB

4

1  (SPx), 2014 WL 12978521, at *2-7 (C.D. Cal. June 18, 2014),[6] For that reason, the Court finds
2  them distinguishable.[7]

3       Like the plaintiffs in *Flauta,* the Plaintiffs were prescribed Singulair, or its generic equivalent, at different times and used it for and at different periods of times. For example, Rosewolf is the only plaintiff who ingested Singulair, rather than a generic equivalent. Plaintiffs also allege that the warning labels varied over time, and Rosewolf alleges he took the drug between 2005 and 2008, but Lewis did not take the drug until 2012. Although there is some overlap between when Gibson and Yuen took the drug, Gibson used it for a much longer period than Yuen. None of the Plaintiffs allege they have the same physician. They also do not allege any facts regarding their medical histories, including why they were prescribed Singulair. Although Plaintiffs' primary theory is a failure to warn, which focuses on Singulair's label and advertising, the Court is persuaded to follow *Flauta* and the weight of the authority cited therein.[8] Plaintiffs do not argue that any substantial right would be prejudiced by sevreance. *Coughlin*, 130 F.3d at 1350.

     Accordingly, the Court GRANTS Defendants' motions to sever. The Court dismisses Lewis's claims, without prejudice to refiling, and dismisses Yuen's claims, without prejudice to refiling. If Lewis and Yuen re-file in this District, they shall file a notice of related case, and the Court will relate the matters to *Rosewolf*.

---

[6]    *See also Plum v. Medtronic,* No. CV 20-4120-DMG (JEMx), 2020 WL 13328436, at *4 (C.D. Cal. Aug. 5, 2020) (resolving plaintiffs' motion to remand and addressing argument of fraudulent misjoinder, noting "weight of decisions in this circuit favor remanding to the state court to decide issues of misjoinder, rather than assuming the propriety of removal despite non-diverse citizenship of parties").

[7]    Plaintiffs also rely on *Blount v. Boston Scientific Corporation,* No. 19-cv-0578 AWI SAB, 2019 WL 3943872 (E.D. Cal. Aug. 21, 2019). The *Blount* case addressed a motion to consolidate under Rule 42 rather than whether the plaintiffs were properly joined under Rule 20.

[8]    The *Flauta* court cited *In re Norplant Contraceptive Prods. Liability Litigation* as one of the cases in the minority. 168 F.R.D. 579 (E.D. Tex. 1996). In that case, the court concluded the same transaction prong was met where plaintiffs alleged defendants "in the same series of acts and omissions specified … failed in their nationwide promotional materials to adequately warn Plaintiffs of the risks and severity of side effects associated with the use of Norplant". *Id.* That case involved an MDL and addressed the issue when the record was far more developed than it is here.

**B.      The Court Denies the Motions to Consolidate.**

The Court now turns to Plaintiffs' motion to consolidate. Pursuant to Rule 42(a), "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." In exercising its discretion, the court must balance "the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation. *Paxonet Communications Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003) (citation omitted). "The party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation." *Miller v. Ventro Corp.*, 2001 WL 34497752, at *3 (N.D. Cal. Nov. 28, 2001).

Defendants' motions to dismiss demonstrate that beyond the question of personal jurisdiction, there are legal issues that will overlap. However, it also is clear that issues will arise that may be unique to each Plaintiff. Plaintiffs also appear to disclaim any interest in having a consolidated trial. (*See, e.g., Rosewolf* Opp. and Cross-Motion at 7:18-19.) The Court concludes procedures short of consolidation can be used to effectively manage these cases. For example, the Court will require the parties to meet and confer, as that term is defined in the Northern District Civil Local Rules, to determine where discovery will overlap and where discovery produced in one case could be used in others. In addition, the Court would support the proposal raised by Defendants in their reply brief that the Court's rulings on common legal issues could be binding across all cases.

Accordingly, the Court DENIES Plaintiffs' cross-motion for consolidation.

**CONCLUSION**

For the reasons set forth herein, the GRANTS the motions to sever and DENIES the cross-motion for consolidation. The Court will address the pending motions to dismiss in separate orders and will schedule case management conferences as appropriate once those motions are resolved.

Dated: August 9, 2022

_____
JEFFREY S. WHITE
United States District Judge